*Formatted for Electronic Distribution*                                                                    *Not For Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

Filed & Entered
On Docket
February 22, 2013

_____

**David Walter Smith and**                                                 Chapter 13 case
**Rose Marie Smith,**                                                       # 12-10142
        **Debtors.**

_____

*Appearances*:  Joan Adler, Esq.      Jan M. Sensenich, Esq.      Jeffrey P. White, Esq.
                Brattleboro, VT       Norwich, VT              Rutland, VT
                For the Debtors       Chapter 13 Trustee      Local Counsel for the Creditor

## MEMORANDUM OF DECISION
### OVERRULING THE TRUSTEE'S AND DEBTORS' OBJECTION TO THE SN SERVICING CLAIM

After confirmation of the Debtors' chapter 13 plan of reorganization, SN Servicing Corporation, the servicer for the secured creditor holding a secured claim on the Debtors' residence, filed a proof of claim asserting a debt due that was over two times larger than the amount the Debtors had allocated to this debt in their plan, and that included over $40,000 for a "forbearance amount." The Debtors, joined by the Chapter 13 trustee, filed an objection to SN Servicing Corporation's proof of claim, focused on whether the creditor was entitled to collect the forbearance amount portion of the claim and also contesting the attorneys fees listed on the proof of claim. For the reasons set forth below, the Court finds the creditor has met its burden of proof, overrules the objection to claim, and allows the SN Servicing a secured claim in the amount of $83,523.39, including the $42,665.79 forbearance amount and $1,000.00 for attorneys fees.

### PROCEDURAL HISTORY

On April 3, 2012, the Court held a confirmation hearing on the Debtors chapter 13 plan and the plan was confirmed. On May 4, 2012, SN Servicing Corporation for SNMLT 2002-2 ("SN Servicing") filed a proof of claim (claim # 16-1).[1] On May 14, 2012, Jan M. Sensenich, the Chapter 13 trustee (the "Trustee"), and Joan Adler, attorney for Mr. and Mrs. Smith (the "Debtors"), filed an objection to SN Servicing's proof of claim (doc. # 17) (the "Objection"). SN Servicing filed a response to the Objection

---

[1]    SN Servicing was not the original lender or the original servicer for that lender. SN Servicing began acting as the servicer for the debt in issue after the note was transferred in 2001. While SN Servicing was acting as servicer, for clarity's sake it will be referred to as the "creditor" as it filed the proof of claim and is seeking to collect on behalf of the creditor.

(doc. # 22), and subsequently filed an amended proof of claim (claim # 16-2). Following entry of a scheduling order (doc. # 25), the Debtors and Trustee filed a supplement to the Objection (doc. # 33). Thereafter, the Court held a hearing on the matter and entered a second scheduling order (doc. # 35). Pursuant to that order, SN Servicing filed two affidavits and other documents in further support of its proof of claim (doc. ## 36, 38), the Debtors and Trustee filed a memorandum of law in response to SN Servicing's filings (doc. # 39), and SN Servicing filed a reply memorandum of law (doc. # 40). The matter is fully submitted.

## JURISDICTION

This Court has jurisdiction over the Objection pursuant to 28 U.S.C. §§ 157 and 1334 and declares it to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Since this is an objection to claim proceeding, this Court has constitutional authority to enter a final order on the merits, Stern v. Marshall, 131 S. Ct. 2594, 2616–2617, 180 L. Ed. 2d 475 (2011), as more fully explained below.

## QUESTIONS PRESENTED

This contested matter presents three questions: First, under Stern and subsequent jurisprudence construing the post-Stern jurisdiction of bankruptcy courts, does this Court have constitutional authority to enter a final judgment determining whether and to what extent SN Servicing's claim is properly allowed? Second, under United Student Aid Funds, Inc. v. Espinosa, 130 S. Ct. 1367 (2010), is SN Servicing precluded from seeking allowance of a claim in excess of the amount provided for in the plan, based upon its failure to object to the plan? Third, if Stern and Espinosa do not prevent this Court from adjudicating the Objection, has SN Servicing met its burden of proof and established that the Debtor must pay the full amount of that claim, including attorneys' fees and the forbearance amount?

## DISCUSSION

### 1. *Stern* Does Not Preclude this Court from Entering a Final Order on the Allowance and Amount of this Claim

In supplemental briefing on the Objection, SN Servicing cited Stern and argued that "the ability of the bankruptcy court to resolve state law disputes in connection with the claims allowance process [is] limited." (doc. # 40, pg. 6). Since Stern, the question of bankruptcy courts' jurisdiction to resolve certain claims has been unsettled, especially when those claims raise issues of state law. Vermont's District Court recently issued a decision construing the scope of Stern. See GMAC Mortg. LLC v. Orcutt, No. 5:12-cv-96, 2012 WL 6552914, 2012 U.S. Dist. LEXIS 177903 (D. Vt. December 13, 2012). This opinion provides a road map for identifying the boundaries of this Court's authority to enter a final judgment on the issues raised in this contested matter.

In Orcutt, the District Court scrutinized the statutory and constitutional basis supporting this Court's determination that it had jurisdiction to rule upon the debtors' complaint seeking a declaratory

2

judgment as to the validity of the subject mortgage. Orcutt, 2012 WL 6552914, at *3, 2012 U.S. Dist. LEXIS 177903, at *8–10. The District Court focused on this Court's finding that the debtors were not requesting relief under 11 U.S.C. §§ 522 or 544,[2] but were instead seeking a determination regarding the extent and validity of a lien under 28 U.S.C. § 157(b)(2)(K). It observed that, under Stern, there are some instances when "§ 157(b) statutorily permits a bankruptcy court to enter final judgment, but Article III of the Constitution does not." Id., at *7, 2012 U.S. Dist. LEXIS 177903, at *20–21 (citing Stern, at 2608). Turning to the facts and procedural posture of Orcutt, the District Court stated that because the bankruptcy court "appears to have adjudicated the adversary proceeding entirely under state law [27 V.S.A. § 141] and entered a final declaratory judgment solely on that basis," the bankruptcy court did not demonstrate constitutional authority to enter a final judgment. Id., at *8, *11, 2012 U.S. Dist. LEXIS 177903, at *23, *29–30. As a result, the District Court vacated and remanded this court's declaratory judgment and directed this court to "clarify the statutory and constitutional basis under which it is proceeding and adjudicate the issues raised by the parties consistent with that statutory and constitutional authority." Id. at *12, 2012 U.S. Dist. LEXIS 177903, at *35–36.

In dicta in Orcutt, the District Court addressed two circuit court opinions, DiVittorio v. HSBC Bank USA, N.A., 670 F.3d 273 (1st Cir. 2012), Waldman v. Stone, 698 F.3d 910 (6th Cir. 2012), as well as Stern, in a discussion regarding the scope of bankruptcy court jurisdiction. Id. at *9–12, 2012 U.S. Dist. LEXIS 177903, at *24–36. That discussion provides relevant guidance to this court in addressing SN Servicing's Stern argument. SN Servicing argues that prior to this court's potential disallowance of its proof of claim by issuance of a ruling on the Objection, "adjudication is needed in order to determine the secured amount of the lien given the issues raised by the objection. This is a state court issue which needs to be brought in the state court regarding the amount due on the lien" (doc. # 40, p. 6). SN Servicing's position is unpersuasive and inconsistent with the holdings of Stern, Orcutt, and other relevant case law.

Both Stern and Orcutt articulate unequivocally that Stern does not to deprive bankruptcy courts of all subject matter jurisdiction. In Orcutt, where the debtors requested a declaratory judgment under Vermont state law regarding the validity of a mortgage, the District Court remanded the proceeding to this court because, as written, that decision neither relied on substantive rights created by federal bankruptcy law, nor described the legal issue as one that, "'by [its] nature, could only arise in the context of a bankruptcy case.'" Id. at *7, 2012 U.S. Dist. LEXIS 177903, at *20 (quoting MBNA Am. Bank, N.A. v. Hill, 436 F.3d 104, 108–09 (2d Cir. 2006)). By contrast, the instant matter is a pure, garden variety objection to a bankruptcy claim, seeking a determination under §§ 502 and 506, and Fed. R. Bankr. P.

---

[2] All statutory citations refer to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

3

3002 and 3007. This puts it squarely within the scope of a bankruptcy court's constitutional authority. As the District Court stated:

> Under Stern and Waldman as applied to this case, the Bankruptcy Court lacked the constitutional authority to issue a declaratory judgment under Vermont law in order to adjudicate a purely state law claim involving private rights. **It, however, possessed the constitutional authority to determine the validity of the [creditor's mortgage] as part of the claims allowance process**, or as an integral part of another proceeding under the Bankruptcy Code. In re Sundale, Ltd., 2012 WL 5974125, at *4 (11th Cir. Nov. 29, 2012) (affirming bankruptcy court's declaratory judgment regarding the extent, validity and priority of claims and debtor's recoupment counterclaim because both claims were "necessarily resolved in the process of ruling on a creditor's proof of claim."); DiVittorio, 670 F.3d at 282 n. 4; In re Pulaski, 475 B.R. 681 (W.D. Wis. 2012) (ruling bankruptcy court has jurisdiction to enter final judgment in debtors' adversary proceeding in which debtors challenged creditor's proof of claim because "[c]learly this is part of the claims process, as the [debtors'] claims will be resolved at exactly the same time that there is a final determination as to whether the creditor is secured or not.").

Orcutt, at *11, 2012 U.S. Dist. LEXIS 177903, at *29–30 (emphasis added) (internal footnote omitted); see also Waldman, 698 F.3d at 920–21. As another bankruptcy court observed following the Stern decision:

> An objection to claim is clearly a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B), and the Supreme Court's recent decision in Stern v. Marshall, --- U.S. ---, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011), does not undermine this court's authority to enter a final order. Indeed by citing Katchen v. Landy, 382 U.S. 323, 86 S. Ct. 467, 15 L. Ed. 2d 391 (1966) and Langenkamp v. Culp, 498 U.S. 42, 44, 111 S. Ct. 330, 112 L. Ed. 2d 343 (1990), the high court recognized that non-tenured judicial officers may resolve disputes in the claims allowance process, including disputes "integral to the restructuring of the debtor-creditor relationship." Stern, 131 S. Ct. at 2617.

In re Borin, 461 B.R. 719, 720 (W. D. Mich. 2011). Thus, SN Servicing's argument is rejected to the extent it asserts this Court lacks constitutional authority under Stern to enter a final judgment in this matter.

## 2. *Espinosa does not Preclude SN Servicing from Seeking Payment of the Full Amount of its Allowed Secured Claim*

Having determined that this Court has authority to enter a final order with respect to the allowance and amount of SN Servicing's claim, we turn to the argument that SN Servicing's failure to object to the chapter 13 plan binds it to the treatment set forth in the confirmation order (i.e., payment in full of a secured claim in the amount of $37,072.00).

In their Objection and supplemental briefing, the Debtors and Trustee argue that since SN Servicing was properly served with the plan, was given proper notice of the deadline for filing an objection to the plan, received timely notice of the confirmation hearing, and did not object to its

4

treatment under the plan, SN servicing is now bound by the terms of the plan and confirmation order (doc. ## 17, 33, 39), pursuant to the Supreme Court's decision in Espinosa, 130 S. Ct. 1367 (2010), which upholds "the binding power of confirmed chapter 13 plans" (doc. # 33). They insist that SN Servicing has forfeited the right to challenge the treatment of its claim under the confirmed chapter 13 plan. SN Servicing concedes that it did not object to the plan, but accurately points out that the plan was confirmed prior to the date SN Servicing timely filed its proof of claim (i.e., ahead of the claims bar date), and it would be inequitable to bind SN Servicing to the treatment set forth in the plan. It asserts that its timely filed proof of claim should be allowed, and once allowed, must supersede the amount and treatment of its claim in the confirmed plan, pursuant to the Bankruptcy Rules (doc. # 40). SN Servicing is correct.

Given proper notice, "[i]n general, the provisions of a confirmed plan are binding on the debtor and creditors." In re Malewicz, 457 B.R. 1, 8 (Bankr. E.D.N.Y. 2010) (citing 11 U.S.C. § 1327(a) and Espinosa, 130 S. Ct. at 1380). However, that is not the end of the inquiry. The directives of the Bankruptcy Code and Rules with respect to chapter 13, this Court's local rules regarding the payment of secured claims in chapter 13 cases, and the terms of the confirmation orders entered in this district all require debtors to either amend their plan or object to the proof of claim when a secured creditor files a timely proof of claim seeking a higher sum, or different treatment, than the plan provides. The local rules articulate the procedure for addressing such secured claims:

> Classification of Claims and Interest – Chapter 13:
>
> **Secured and Priority Claims.** The Chapter 13 trustee must pay all secured and priority claims the amount indicated in the proof of claim unless either the creditor affirmatively consents to a different treatment or an objection to the claim is filed and sustained. Where no proof of claim for a secured or priority debt is filed, the Chapter 13 trustee must pay the amount provided in the plan.

Vt LBR 3013-3. Moreover, the confirmation order used in this district provides further protection, clarity and direction, stating, in relevant part:

> 18. In the event that a proof of claim for a priority claim or secured claim to be paid in the Plan is filed in an amount greater than that provided for under the Plan, and after notice of the filed claims, debtor fails to object to the claim or modify the Plan, the term of the Plan, to the extent that it is less than 60 months, shall be deemed to be extended up to 60 months as necessary to pay such claim in full.

The local rule and confirmation order contain this language because it is our practice to hold confirmation hearings on the same date as the initial chapter 13 section 341 meetings of creditors, which necessarily falls prior to the claims bar date. Such an approach is not unique. See In re Butcher, 459 B.R. 115, 119–21, 133–134 (D. Colo. 2011) (discussing the timing of confirmation hearings, the proof of claim process, and the claims bar date; and presenting the practice used in 93 judicial circuits). Holding the confirmation hearing and section 341 meeting on the same day satisfies the requirements of the Bankruptcy Code and

5

Rules, protects the rights of creditors, expedites the confirmation of chapter 13 plans, and allows debtors to fulfill their section 341 obligations and provide the testimony necessary to obtain confirmation of their plans with a single trip to court (hence missing just one day of work).

In this case, for reasons unrelated to SN Servicing's claim, the Trustee did not file the proposed confirmation order until July 9, 2012 – over three months after the April 3rd confirmation hearing. That delay was due to the fact that Debtors' counsel and Trustee were waiting for the claims bar date to pass to determine how to structure the monthly payments in a way that would comply with the means test and possibly pay a 100% dividend to general unsecured creditors. During the three-month hiatus, and as permitted by the Bankruptcy Code and our local rules, SN Servicing filed a timely proof of claim seeking payment on the debt secured by the Debtors' residence. At that point, as required by the Bankruptcy Code, the local rules, and the terms of paragraph 18 the confirmation order, the claims objection process began.[3] See Butcher, 459 B.R. at 128–29 (analyzing a similar model plan which contained a provision "requiring a debtor to substantiate his version of a claim by prosecuting an objection to a timely filed and allowed claim where the proof of claim differs from the plan term . . . ."). The Court entered the confirmation order on July 10, 2012, and the confirmation order included paragraph 18, set out above, which fully addressed the impact of a secured proof of claim filed post-confirmation. The terms of paragraph 18 unequivocally authorized SN Servicing to file a proof of claim post-confirmation, and compelled the Debtors to object to the claim or modify the plan to comport with the proof of claim.[4] For the foregoing reasons, Espinosa does not preclude SN Servicing from seeking payment of the full amount of its allowed claim, as set out on its proof of claim.

### 3. SN Servicing Sustained its Burden of Proof and Therefore its Claim is Allowed

---

[3] Typically where there is a dispute as to the nature or amount of a secured claim that arises prior to the date the Trustee files the proposed confirmation order, the Trustee includes a provision in the "Other" section at the end of the order stating that treatment of that creditor's claim will not be finalized until the claims objection process is concluded. It is not clear why the Trustee did not include such a provision in this confirmation order nor is the omission of such a provision fatal to SN Servicing's claim.

[4] SN Servicing also presented two other, much more abbreviated arguments regarding the scope of the confirmation order's *res judicata* effect. First, SN Servicing asserts that since it holds a lien on the Debtors' real property that will survive the bankruptcy discharge, SN Servicing is not obligated to file a proof of claim at all. That is correct if the creditor only wishes to protect its right to the collateral. Since SN Servicing is seeking payments from the Debtor in connection with the Debtors' personal liability for the debt, it must file a proof of claim. Second, SN Servicing argues that to allow the Debtor to obtain a discharge of personal liability of this claim without payment in full would impermissibly modify a claim secured solely by a mortgage on the Debtors' principal residence, in violation of § 1322(b)(2). This argument fails under Espinosa which specifically held that even if the bankruptcy court enters a confirmation order that is in error, it is still binding if the creditor had notice of the provision and failed to object. See Espinosa, 130 S. Ct. at 1378–80. Neither of these arguments defeats the Objection.

In order to determine if SN Servicing has met its burden of proof, we begin with the controlling statute and rules, and then consider each component of SN Servicing's proof of claim. The statute governing allowance of claims, § 502, provides, in relevant part:

> (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.
>
> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
>
>   (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured . . . .
>
> . . .

11 U.S.C. § 502(a)–(b)(1). Federal Rule of Bankruptcy Procedure 3001 sets out the procedure for filing a proof of claim, as well as the evidentiary effect of a proof of claim, as follows:

> (a) Form and content. A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form.
>
> (b) Who may execute. A proof of claim shall be executed by the creditor or the creditor's authorized agent . . . .
>
> (c) Supporting information.
>
>   (1) Claim based on a writing. When a claim . . . is based on a writing, the original or a duplicate shall be filed with the proof of claim . . . .
>
> . . .
>
> (f) Evidentiary effect. A proof of claim executed and filed in accordance with these rules **shall constitute prima facie evidence of the validity and amount of the claim**.

Fed. R. Bankr. P. 3001(a)–(c)(1), (f) (emphasis added).

Although Rule 3001(f) establishes the initial evidentiary effect of a filed claim, the burden of proof "[r]ests on different parties at different times. Initially, the claimant must allege facts sufficient to support the claim. If the averments in [the] filed claim meet this standard of sufficiency, it is '*prima facie*' valid." In re Allegheny Int'l, Inc., 954 F.2d 167, 173 (3d Cir. 1992) (citation omitted). In order to rebut the presumption of prima facie validity the objecting party must produce "evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations . . . essential to the claim's legal sufficiency." In re Weatherell, 2010 Bankr. LEXIS 3492, *3, 2010 WL 3938225, *1 (Bankr. D. Vt. Sept. 29, 2010); see also In re Allegheny Int'l, Inc., 954 F.2d at 173–74. If the objecting

7

party is successful, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. See In re Weatherell, 2010 Bankr. LEXIS 3492 at *3–4, 2010 WL 3938225 at *1; see also In re Allegheny Int'l, Inc., 954 F.2d at 173–74; In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009).

"'Preponderance of the evidence' has been defined as the weight, credit, and value of the aggregate evidence on either side . . . synonymous with the term 'greater weight of the evidence' . . . [i]t is, as the term itself suggest, a tilting of the scales in favor of the party whose evidence carries greater weight. Glinka v. Bank of Vermont (In re Kelton Motors, Inc.), 130 B.R. 170, 174 (Bankr. D. Vt. 1991) (citing 30 Am. Jur. 2d, Evidence, § 1164, at 339 (2d Ed. 1967). The Second Circuit has stated, "the term 'preponderance' means that 'upon all the evidence . . . the facts asserted by the plaintiff are more probably true than false.'" Nissho–Iwai Co., Ltd. v. M/T Stolt Lion, 719 F.2d 34, 38 (2d Cir. 1983) (citation omitted). The preponderance of the evidence burden of proof may be met through both direct and circumstantial evidence. See Jazz Photo Corp. v. United States, 439 F.3d 1344, 1350–51 (Fed. Cir. 2006). Whether a party meets its burden through direct or circumstantial evidence, or a combination, the trier of fact is tasked with considering all the evidence:

> If, after considering all the evidence, including testimony, the trier of fact is satisfied that the moving party's submissions are more probable and credible than the opposing party's evidence, then the moving party will have carried the burden as to each essential point of the claim[s]. On the other hand, if the trier of fact finds that the testimony of both parties is in balance, or equally probable, then the moving party will have failed to sustain the required burden.

In re Kelton Motors, 130 B.R. at 174.

The salient question here is whether SN Servicing proved the validity and amount of its claim, and defeated the allegations set forth in the Objection, by a preponderance of the evidence. The procedural and factual underpinnings of this question are undisputed. The Debtors' plan classified SN Servicing as a secured creditor holding a claim in the amount $37,072.00, comprised of $33,034.08 allocable to past due principal (which the Debtors would pay with interest at 12.999% per annum), and $4,037.92 allocable to pre-petition interest (which the Debtors would pay without interest). After the confirmation hearing, and before the claims bar date, SN Servicing filed its proof of claim. While the original proof of claim (with attachments) is not a model of clarity, it unquestionably asserted a secured claim, set forth a breakdown of the amount claimed to be due, and included attachments to evidence a secured claim (i.e., the note dated April 25, 1995 (the "1995 Note"), the underlying mortgage, and spreadsheets of late charges and insurance advances). The claim was for $83,573.39, composed of principal in the amount of $33,034.11 and interest in the amount of $3,845.56 – figures nearly identical to those listed by the Debtors in their plan. However, it also claimed additional sums to be due: $387.78 for late charges, $2,580.15 for

insurance advances, $1,050.00 for foreclosure attorney fees, $10 for a fax fee, and a "Forbearance – due at maturity 11/1/19," in the amount of $42,665.79 and incurred on November 12, 2002 (claim # 16-1).

Under Fed. R. Bankr. P. 3001(f), the proof of claim was sufficient to be prima facie valid. When the Debtors and Trustee filed the Objection, effectively calling into question essential components of the proof of claim, the burden then shifted to the creditor to establish the validity of its claim by a preponderance of the evidence. The Objection vehemently challenged the sufficiency of the documentary support for the claim. First, the Trustee and Debtors disputed SN Servicing's assertion that the Debtors owed it the alleged forbearance amount of $42,665.79, arguing that there were "no documents attached to the proof of claim, signed by the debtors, stating that they agreed to a forbearance, that they had knowledge of the forbearance, or that a forbearance actually occurred." Second, the Objection targeted the legal fees of $1,050, based on the lack of invoices or any other documentary support for that part of the claim. SN Servicing responded to the Objection by filing an amended proof of claim (claim # 16-2) and supplemental loan documents (doc. # 36, the "Supplement"). The Court must scrutinize each of the components of the proof of claim.

A. THE CURRENT PRINCIPAL, INTEREST AND CHARGES

The Debtors and Trustee did not object to the amount SN Servicing claimed due for principal ($33,034.11), pre-petition interest arrears ($3,845.56), late charges ($387.78), insurance advances ($2,580.15), or the fax fee ($10). The Court finds the prima facie validity as to these sums is unchallenged, finds the record supports the amounts claimed, and therefore allows these elements of the proof of claim, totaling $39,857.60.

B. THE LEGAL FEES AND COSTS

The Debtors' and Trustee's only objection to the legal fees was that there was no invoice attached to the proof of claim to substantiate this line item. The amended proof of claim set out legal fees in the reduced amount of $1,000.00 ($50.00 less than set forth in the original proof of claim), stated that the new figure included $600 for its foreclosure attorney fees and $400 for title costs, and included a pre-petition invoice from SN Servicing's foreclosure attorney dated March 7, 2012 delineating this breakdown. In subsequent briefing, the Debtors and Trustee did not dispute the attorney's fees or the accuracy of the invoice for legal fees and costs.

Based upon this record, the Court treats the Objection to legal fees and costs to be withdrawn. To the extent it is not withdrawn, the Court finds SN Servicing has presented evidence to support $1,000.00 for legal fees and costs, finds those fees and costs to be reasonable, overrules the Objection regarding legal fees and costs, and allows SN Servicing's claim for legal fees and costs in the amount of $1,000.00.

C. THE FORBEARANCE AMOUNT

To establish its right to the $42,665.79 "forbearance amount," SN Servicing filed an affidavit of one of the creditor's employees, accompanied by foreclosure demand letters, monthly billing statements from May 2002 to July 2011, other billing and account records, an offer to the Debtors of a payment extension plan called "New Beginnings," and copies of the note and mortgage with allonges and assignments (doc. # 36). The Debtors and Trustee continued to contest the sufficiency of SN Servicing's documentary support, notwithstanding the filing of the Supplement, and articulated their objection to the forbearance amount on three grounds: (1) the amount the Debtors listed in their schedules and proposed to pay through the plan is the figure SN Servicing's foreclosure counsel gave to the Debtors' counsel and should be binding on the creditor[5]; (2) the account history SN Servicing presented did not prove the amount of missed payments prior to the alleged forbearance; and (3) SN Servicing has presented no proof that the Debtors signed any documents evidencing an intent to enter the New Beginnings program or otherwise agreed to pay the forbearance amount.

The argument that the principal and interest provided for in the plan is the maximum amount due because SN Servicing's local foreclosure attorney gave the Debtors' attorney that figure, is without merit. There is nothing in the record to show that this attorney gave the Debtors' attorney this figure as part of an opinion letter, included any guarantee of accuracy with it, or filed anything in this case claiming that amount to be the amount due to SN Servicing. Rather, it appears that the Debtors' attorney contacted the foreclosure attorney to ask for the amount due to include in the bankruptcy schedules and plan, and creditor's counsel attempted to provide that figure. It is now apparent that the attorney did not give Debtors' counsel a figure that included the forbearance amount. This communication (or miscommunication) does not preclude SN Servicing from claiming – and proving – a higher amount in this case. Once the Debtors filed their bankruptcy case, SN Servicing hired local bankruptcy counsel and that attorney followed the applicable procedures to assert a claim.[6]

The Debtors' and Trustee's argument based upon insufficient documentation asserts SN Servicing's claim must be disallowed because SN Servicing did not file any documentation showing activity on the account prior to 2001, and the documentation of post-2001 activity is unclear and incomplete. While it is true that filing a full account history it would have been a surer way for SN Servicing to establish its burden of proof, the creditor may meet – and has met – its burden by

---

[5] The attorney who represented SN Servicing in the foreclosure is not representing it in the bankruptcy proceeding.

[6] It may well be that the local foreclosure attorney made a mistake which resulted in an inaccurate picture of the amount due on the note, or it may be that in a foreclosure proceeding, SN Servicing made a business decision to foreclose based only upon on the current principal and interest due, without regard to the forbearance amount or interest arrearage. Whether there was an error or a strategic decision, the Debtors and Trustee have failed to present any case law or statutory basis for finding that SN Servicing is now precluded from asserting in its proof of claim the total amount due from the Debtors.

circumstantial evidence. The many years of monthly statements SN Servicing sent to the Debtors listing the forbearance amount without any objection from the Debtors, as well as SN Servicing's diligent but unsuccessful search for the pre-2001 account information overcome the lack of specific records to document the missed payments. While none of the documents in the record is sufficient in itself, together they paint a picture that the claimed forbearance amount is still due and corresponds to the amount of unpaid interest due on the 1995 Note, as of November 2002.

SN Servicing's relationship with the Debtors began in 2001, when it became the servicer for the Debtors' 1995 Note. SN Servicing provided what appears to be an internal document that its Supplement designated a "loan purchase statement." This document contains loan information showing that the loan had been transferred from North American Mortgage Company to Ingomar LP (for whom SN Servicing acted as servicer) with a closing date of August 31, 2001, on the effective date of October 15, 2001. This document showed an outstanding amount due of $107,426.76, including $64,352.61 of principal.[7]

In October 2001, contemporaneously with becoming the servicer on the 1995 Note, SN Servicing sent three letters to the Debtors. One informed the Debtors that, effective October 15, 2001, the loan had been assigned, sold or transferred to SN Servicing (for Ingomar LP) from North American Mortgage Company. Another one requested the Debtors have their insurance carrier contact the servicer to verify insurance was in place on the property. The third letter – and the one most critical to this matter – was sent pursuant to the Federal Fair Debt Collection Practices Act, stated that, as of October 10, 2001, the total amount due was $108,445.77, and alerted the Debtors that they had thirty days to dispute the amount due. The Debtors and Trustee have presented no proof to show the Debtors ever responded to this letter or registered any dispute as to the amount SN Servicing claimed to be due. SN Servicing also sent a December 13, 2001 payoff letter to the Debtors showing a principal balance due of $64,070.03, with an interest amount due of $44,524.64. These principal and interest amounts are consistent with the other amounts provided to the Debtors in late 2001. The Supplement includes copies of all of these documents.

SN Servicing also filed a copy of a November 13, 2002 letter offering a forbearance to the Debtors that stated the principal balance was $62,562.11, declared the Debtors to be 63 payments in arrears, and offered to forbear from collecting the $42,665.79 of past due interest (composed of accrued and unpaid interest in the amount of $39,018.18, plus late charges). The statement of the loan status as of November 2002 is consistent with the letters and other documents from 2001, as well as the billing statements from 2002 through 2011.

---

[7]   Though not stated on the loan purchase statement, it appears from the totality of the record that the remaining $43,074.15 was comprised of interest, charges and late fees.

To support its allegation that the forbearance amount is valid and still due, SN Servicing supplied nearly a decade worth of billing statements. From May until October 2002, the statements showed the Debtors to be 63 payments in arrears, and demanded payment of the regular monthly mortgage payment. After November 2002, the month SN Servicing claims the Debtors entered into the forbearance arrangement, the monthly billing statements showed the Debtors to be current.[8] This underscores the long term and consistent notice to the Debtors that $42,665.79 in interest and charges was due. The record contains no indication the Debtors ever questioned or disputed the interest and late charges shown on the many years of monthly billing statements.

In response to the Trustee and Debtor's argument that the Debtors never agreed to a forbearance arrangement or accepted the New Beginnings offer, SN Servicing sets out the following history of the parties' relationship: On November 13, 2002, when the Debtors had missed over 5 years of payments due under the 1995 Note, SN Servicing sent the Debtors a letter informing them that they were 63 payments behind, and owed an outstanding principal balance of $62,562.11, plus accrued and unpaid interest of $39,018.18. It indicated the Debtors were eligible for SN Servicing's "New Beginnings" program, under which SN Servicing would defer payments on the sum of $42,665.79, comprised of the unpaid interest of $39,018.18, plus $3,647.61 in late charges (the "forbearance amount"), if the Debtors made the regular monthly payments toward the principal balance and currently accruing interest on that sum. The Debtors' monthly payments would be in the same amount, $837.15, as before the offer. Additionally, under this program, SN Servicing would forbear from pursuing the remedies available to it under the 1995 Note, including foreclosure. If the Debtors remained current under the program, at the maturity date of the 1995 Note they would have paid all principal and interest due other than the forbearance amount ($42,665.79). At that point, the Debtors could continue to make the regular monthly payments on the forbearance amount until that was paid in full, until what SN Servicing called the Extended Maturity Date. Thus, it appears the New Beginnings program was potentially beneficial to both parties: SN Servicing would avoid incurring further foreclosure expense and have a performing loan, and the Debtors would retain their home, reinstate the mortgage note, keep their monthly mortgage payment constant, defer payment of the past due interest until after all principal was paid, and extend the repayment term. SN Servicing

---

[8] While the forbearance amount disappeared from the statements for four months, it reappeared on the statements from March 2003 through the July 2011 statement. Beginning in March 2003, an amount begins to appear in a line item "other fees/charges," originally in the amount of $43,070.85. From March 2003 until May 2008, the line item of "other fees/charges" increased by an amount slightly more or less than the forced placed insurance amount. Beginning in May 2008 until July 2011, the forbearance amount is listed as a separate line item "arrearage\forbearance int" for $42,665.79. The "other fees/charges" line item still existed, and still increased by an amount approximate to the forced placed insurance premium. However, from May 2008 to July 2011, the amount of the "arrearage\forbearance int" never changed from $42,665.79. The last billing statement in the record is July 2011, presumably because the property went into foreclosure shortly before the bankruptcy filing.

12

asserts the Debtors availed themselves of this opportunity and made payments under the New Beginnings program for several years – until shortly before they filed this bankruptcy case – and therefore are liable for the full amount due under the mortgage and set forth on the proof of claim, including the forbearance amount.

The Debtors and Trustee respond that the forbearance amount cannot be enforced against the Debtors because there is no evidence they were aware of this offer or that the forbearance actually occurred, and the creditor has failed to produce any document the Debtors signed evincing their agreement to pay the forbearance amount or proceed under the New Beginnings program. Since the Debtors' monthly payment remained the same under that program, once cannot discern if the Debtors intended their post November 2002 payments to be treated as regular loan payments or payments under the New Beginnings program.

However, the emphasis on whether the Debtors intended to enter a forbearance agreement in November 2002 is misplaced. The controlling instrument with respect to the Debtors' obligation to this creditor is the 1995 Note. The 1995 Note was the Debtors' promise to pay the lender $66,200.00, plus interest at the rate of 12.990% per annum, by May 1, 2010. Under the 1995 Note, the Debtors are liable for the full principal amount, plus all interest that comes due thereon plus certain costs and expenses. The Debtors and Trustee have neither disputed the validity of the 1995 Note nor the Debtors' obligation to comply with it. When the Debtors fell behind in payments under the 1995 Note, they owed the accrued interest and late charges under that note, regardless of whether SN Servicing chose to forbear from demanding immediate payment of those amounts. Whether the Debtors entered into a separate agreement with SN Servicing to trade the creditors' forbearance for the Debtors' continued payments is of no import with respect to the Debtors' liability for the past due interest. Assuming *arguendo*, that no forbearance agreement existed, that is to say that the Debtors did not accept the New Beginnings program offer, the Debtors would still owe the amounts of accrued interest due on the underlying note. The Court does not find that SN Servicing's characterization of the past due interest as the forbearance amount to change the nature of the sum due – it is simply past due interest the Debtors owe under the 1995 Note. [9] The Debtors' obligation to pay it is not dependent upon a finding that the parties entered into a binding settlement or forbearance agreement.

---

[9] The Trustee asserts that the forbearance amount may include principal and interest. This argument is not persuasive. A simple amortization schedule for the terms of the 1995 Note however demonstrated that the $39,018.18 SN Servicing claims to be due as interest as of the November 13, 2002 letter is solely comprised of the interest due for 63 missed payments. Moreover, the remaining $3,647.61 asserted as late charges in the November 13, 2002 letter does not appear to the Court to be out of line for a loan with 63 missed payments. The Court concludes the forbearance amount is solely interest and late charges due as of November 13, 2002, and does not include any principal.

13

The Debtors' and Trustee's arguments with respect to the lack of records demonstrating the components of the forbearance amount has merit – and is significant in this analysis – but it is not sufficient to find SN Servicing failed to meet its burden of proof and does not warrant disallowance of the forbearance amount. This is particularly true where, as here, the Debtors received regular notice that the sum of these two figures was due for interest and late charges and never disputed it. In a similar vein, the Court rejects the Debtors and Trustee's argument that the New Beginnings offer, if valid, is tantamount to the creation of a "new loan" [10] and is unenforceable without a separate note signed by the Debtors. The record supports the forbearance amount corresponding to the past due interest payments and late charges that the Debtors owed under the 1995 Note. No additional instrument is necessary to evidence the indebtedness. SN Servicing has met its burden of proof on this element or the proof of claim and is thus entitled to an allowed claim for the full forbearance amount of $42,665.79.

### 4. *The Equities also Support Allowance of the Entire Proof of Claim*

In addition to consideration of the totality of circumstances in the context of the burden of proof analysis, this Court considers the demands of equity in assessing whether, and in what amount, to allow SN Servicing's secured claim. "'For many purposes, courts of bankruptcy are essentially courts of equity,' Pepper v. Litton, 308 U.S. 295, 304 (1939), and the claims allowance process, which resolves debtor-creditor relations, is specifically equitable in nature" Orcutt, 2012 WL 6552914, at *11, 2012 U.S. Dist. LEXIS 177903, at *31–32 (citations omitted). Indeed, the Second Circuit has "repeatedly emphasized the importance of the bankruptcy court's equitable power. Momentum Mfg. Corp v. Employee Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d Cr. 1994). "[T]he bankruptcy court in passing on allowance of claims sits as a court of equity . . . [and] in the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in the administration of the bankrupt estate." Pepper, 308 U.S. at 307–08. Applying principles of equity to this matter leads this Court to conclude that it must overrule the Objection. To do otherwise would result in a gross injustice: it would create a windfall for Debtors who were able to reside in their house notwithstanding their failure to make over five years' of payments, while imposing a substantial financial penalty on the mortgagee who deferred repayment of almost $40,000.00 of past due interest rather than foreclosing. The equities embedded in the facts of this case support the Court's conclusion to allow the forbearance element of the proof of claim.

---

[10] The Trustee pointed to a loan history spreadsheet which referred to a "new loan" on the first line with a corresponding date of September 14, 2001. As previously stated, the Court notes that another document submitted by SN Servicing, the "loan purchase statement," indicates that the loan was transferred to the creditor, for which SN Servicing acted as servicer, after a closing date of August 31, 2001. The Court finds it more plausible that this reference to a "new loan" indicates the opening of the account file within SN Servicing's records two weeks after the transfer, rather than the creation of a new loan agreement in September 2001.

14

## CONCLUSION

The Court finds it has jurisdiction over this core proceeding and constitutional authority to enter a final judgment determining the nature and amount of SN Servicing's allowed claim. The Court also finds that the creditor is not precluded by Espinosa or the terms of the confirmation order from seeking payment of its proof of claim. Lastly, the Court finds SN Servicing has met its burden of proof by a preponderance of the evidence with respect to all elements of its proof of claim. Therefore, SN Servicing's claim for $83,523.39 is allowed in full as a secured claim comprised of the forbearance amount ($42,665.79), reasonable the attorney's fees and costs ($1,000.00), and the undisputed components of the proof of claim ($39,857.60).

This constitutes the Court's findings of fact and conclusions of law.

February 22, 2013                                                                Colleen A. Brown
Burlington, Vermont                                               United States Bankruptcy Judge